UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK **CV 12          3808**
-----------------------------------------------------------------X

PAUL COTTERELL,

**COMPLAINT**

Plaintiff, ~~SUMMONS ISSUED~~

-against-

Docket No.:

JAMES GILMORE, WILLIAM HASTBACK, SUSAN RITCHIE and JOHN and JANE DOE (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named Defendants),

**JURY TRIAL
REQUESTED**

Defendants.

-----------------------------------------------------------------X

Plaintiff, **PAUL COTTERELL** ("Plaintiff"), by his attorneys,

**MADUEGBUNA COOPER LLP**, for his complaint herein alleges:

## I      THE NATURE OF THIS ACTION

1.      This is an action for injunctive relief, declaratory judgment and money

damages to remedy discrimination on the basis of race, color and national origin in the

terms, conditions and privileges of employment under 42 U.S.C. §1981 as amended by

the Civil Rights Act of 1991, 42 U.S.C. §1981(a) ("Section 1981"), and the New York

Human Rights Law as contained in New York State Executive Law, §296 *et. seq.*

("NYHRL").

2.      This action is being brought to vindicate the human and civil rights of

Plaintiff. Plaintiff contends that the terms, conditions and privileges of his employment relationship with the State of New York were adversely affected, in part, because of his race, color and national origin, and in retaliation for his prior complaints of racial discrimination.

## II    JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over the state causes of action pleaded herein.

## III    PARTIES

4. Plaintiff is a Black male of Jamaican national origin.

5. At all relevant times, Plaintiff was a resident of the City of Poughkeepsie, in Dutchess County, State of New York.

6. Plaintiff has been an employee of the State of New York (the "State") for over twenty years, and currently holds the title of "Food Inspector 1" with the Shellfisheries Section of the New York State Department of Environmental Conservation ("DEC").

7. At all relevant times, Defendant, JAMES GILMORE ("GILMORE"), was employed by the State in the position of Chief, Bureau of Marine Resources, at DEC.

8. Defendant GILMORE, a white male, is sued here both in his personal and official capacities.

9. At all relevant times, Defendant, WILLIAM HASTBACK ("HASTBACK"), was employed by the State in the position of Acting Shellfisheries Section Head, at DEC. In this position, HASTBACK reports directly to defendant, GILMORE.

10. Defendant HASTBACK, a white male, is sued here both in his personal and official capacities.

11. At all relevant times, Defendant, SUSAN RITCHIE ("RITCHIE"), was employed by the State in the position of Food Inspector 2, in the Shellfisheries Section at DEC.   In this position, Defendant RITCHIE reports directly to defendant, HASTBACK.

12. Defendant RITCHIE, a white female, is sued here both in her personal and official capacities

13. At all relevant times, Defendants were acting under color of the statutes, ordinances, regulations, customs and usages of the United States, and the State of New York, and under the authority of their respective positions or offices.

### IV.    **FACTS COMMON TO ALL CAUSES OF ACTION**

14. Plaintiff has been in public service for more than 20 years, in the employment of the State of New York.

15. From 2004 to 2010, Plaintiff was employed with the New York State Executive Department, Office of General Services ("OGS"), in the position of Food Inspector 1.

16.  On or about December 2010, Plaintiff filed suit in New York Supreme Court, Dutchess County against the State of New York and several of his superiors and supervisors at OGS (hereinafter, the "State Lawsuit").

17.  The State Lawsuit, which is pending disposition, seeks injunctive relief, declaratory judgment, and money damages to remedy discrimination on the basis of race, color, and national origin in the terms, conditions, and privileges of Plaintiff's employment in violation of applicable anti-discrimination statutes.

18.  In or about April 2011, Plaintiff responded to a letter from DEC inviting him to interview for the vacant position of "Food Inspector 1" with the Shellfisheries Section.  The position is located in East Setauket, in Suffolk County, State of New York.

19.  Plaintiff was entitled to the position of Food Inspector 1 at DEC's Shellfisheries Section based solely on his civil service title, experience and seniority amongst other eligible state employees. In short, Plaintiff's hiring for this position was not discretionary but mandatory.

20.  On or about April 25, 2011, Plaintiff was interviewed by Defendants HASTBACK and RITCHIE, and was subsequently appointed to the position of Food Inspector 1, effective May 12, 2012. In this position, Plaintiff's immediate supervisor is defendant RITCHIE.

21. As Food Inspector I, Plaintiff is responsible for conducting sanitary inspections of shellfish wholesaler and processor facilities, as well as investigations of related activities and complaints across New York State, so as to ensure compliance with state and federal public health laws and regulations.

22. Upon information and belief, the named defendants were aware of Plaintiff's State Lawsuit, prior to or contemporaneously with the commencement of his employment with DEC.

23. Upon information and belief, immediately following Plaintiff's interview for the Food Inspector I position at DEC, and since he assumed the position, Defendants have evinced a hostile disposition toward Plaintiff.

24. Despite Plaintiff's being at the very top of the State Civil Service list, and hence mandatorily preferred for the Food Inspector 1 position, GILMORE and HASTBACK refused to notify Plaintiff of his hiring for more than two weeks after the interview. Defendants RITCHIE and HASTBACK had assured Plaintiff he would be notified of his hiring within a day after the interview.

25. When Plaintiff was eventually notified of his hiring by HASTBACK on or about April 18, 2011, HASTBACK was brusque, impolite and dismissive in tone, and showed marked displeasure with the hiring of Plaintiff.

26. In further display of *animus,* and contrary to the custom and practice with incoming new hires at DEC, Plaintiff did not so much as receive a welcome letter from DEC until several months after his employment commenced.

27. Upon information and belief, at various times after Plaintiff began working with DEC, Defendants GILMORE, HASTBACK, and RITCHIE openly stated to Plaintiff's co-workers that they disliked the fact they had to hire Plaintiff.

28. Upon information and belief, the hostility evinced by Defendants was motivated by a discriminatory *animus*, at least in part because Plaintiff is Black and/or of Jamaican national origin, and in retaliation for Plaintiff's prior complaints of discrimination as outlined in the State Lawsuit.

29. Based on considerations of race, color and national origin, and in retaliation for Plaintiff's complaints in the State Lawsuit, Defendants have subjected Plaintiff to differential treatment in the terms, conditions and privileges of his employment relationship with Defendants and the DEC. These differential terms and conditions of employment include, but are not limited to the following:

   a.    Between July and August 2011, Plaintiff performed five inspections of Shellfish facilities with his supervisor, defendant RITCHIE. These inspections were mandatory for Plaintiff to be in compliance as an inspector meeting the Interstate Shellfish Sanitation Conference ("ISSC") Standardization requirements, and thus, had to be evaluated by RITCHIE. RITCHIE refused to

evaluate the five inspections performed by Plaintiff, and thereby prevented Plaintiff from being ISSC-compliant.

b.      Defendants refused to timely conduct Plaintiff's initial Six-Months Performance Evaluation (covering the period May 12 – November 12, 2011) and did not evaluate Plaintiff until January 10, 2012.  Knowing that RITCHIE's failure to timely conduct the evaluation would result in an automatic rating of "Satisfactory" under DEC personnel rules, RITCHIE and HASTBACK conspired to change the dates of Plaintiff's Six-Month evaluation period in order to carry out their intent of procuring his termination by giving him an "unsatisfactory" rating.

c.      In an attempt to procure the termination of Plaintiff's employment with the State, and without just cause, RITCHIE has given Plaintiff "unsatisfactory" ratings in his performance evaluations.  These negative evaluations were motivated by retaliatory and discriminatory *animus*, and were replete with inaccuracies and based on matters extraneous to Plaintiff's evaluation program.

d.      Plaintiff's challenge of RITCHIE's unjustified "unsatisfactory" ratings in his performance evaluations was met with such comments as "Sue Me", an obvious reference to plaintiff's pending State Lawsuit.

e.      RITCHIE's evaluations were in bad faith and deliberately

-7-

omitted supervisory guidance to Plaintiff by failing to specify deficiencies or formulate goals and action plans to remedy purported deficiencies. As a consequence, Plaintiff was deprived of the critical guidance and feedback to which an employee is entitled to facilitate transition into a new position.

   f. Defendants have intentionally subjected Plaintiff to ridicule in the eyes of his co-workers and plant managers. On several occasions, and without Plaintiff's knowledge, RITCHIE and HASTBACK surreptitiously directed other white co-workers to inspect plants and facilities assigned to Plaintiff for the purpose of criticizing Plaintiff's work, causing Plaintiff great embarrassment when he unknowingly visited the very same plants or facilities for the purpose of conducting his assigned inspections.

   g. On several occasions between May 17, 2011 and April 2012, Defendants have refused to reimburse Plaintiff (as required by DEC regulations) for travel expenses incurred while in the course of his official duties including, without limitation, for travel to conduct food inspections in Fish Markets in The Bronx and Brooklyn in the City of New York.

   h. Defendant RITCHIE, with the approval and/or active connivance of HASTBACK and GILMORE, has repeatedly refused to approve Plaintiff's Leave Requests for time off without just cause. Contrary to the labor contract agreement between DEC and its employee Union, Plaintiff has been asked to

-8-

provide proof of why he needed time off, including medical documentation. Upon information and belief, no white Food Inspectors or white employees at the Bureau of Marine Resources are subjected to such onerous demands when a Leave Request is made.

      i.  Defendants have threatened to withhold Plaintiff's pay if he took time off to attend to his medical needs and other lawful obligations.

      j.  Plaintiff was threatened with discipline by RITCHIE for refusing to divulge his confidential medical information, when Plaintiff applied to take up to four (4) hours off for medical screening, as was his entitlement under DEC policy.

      k.  Upon information and belief, Plaintiff is the only member of the Shellfish Inspection Unit who is required to provide a doctor's note in order to use his sick leave accruals, and Plaintiff has been required to do so since December 2011.

      l.  Defendants have regularly refused to approve, or to timely approve, Plaintiff's timesheets, and have refused to act on his timesheets and travel expense reimbursement claims since March 15, 2012. As a result of Defendants' refusal to act on his timesheets and expense claims, Plaintiff has been purposely placed in constant fear of not getting paid, and has been forced to respond to repeated demands for his timesheets by upper management when in fact those

timesheets were timely placed in the possession of Defendants.

     m.  Defendants have repeatedly threatened to terminate Plaintiff's employment.

     n.  On July 30, 2012 defendants unjustifiably directed Plaintiff to either proceed on leave without pay or be reassigned to a position performing out of title work, and informed him that they will commence a Notice of Discipline against him within five (5) business days of either his suspension or reassignment.

     o.  In order to not lose his salary and continue to support his family, on July 31, 2011, Plaintiff, without waiving any of his rights, was compelled to accept the temporary reassignment.  Plaintiff is presently awaiting service of the Notice of Discipline threatened by the defendants.

30.  As hereinafter specifically alleged, since May 12, 2011, Defendants GILMORE, HASTBACK, RITCHIE and others acting under their direction, have created a hostile work environment for Plaintiff.

31.  Furthermore, since May 12, 2011, Defendants and others acting under their direction have subjected Plaintiff to harassment that has the effect of unreasonably interfering with plaintiff's work performance and creating an intimidating, hostile or offensive work environment that seriously affects the psychological well-being of plaintiff. Plaintiff was subjected to these acts of harassment and discrimination because of his race, color and national origin.

32. The various discriminatory acts suffered by Plaintiff include, but are not limited to, the following:

a.     Contrary to DEC Policy on *Workplace Violence Prevention*, Plaintiff is the only Food Inspector 1 and, upon information and belief, the only DEC employee at the Bureau of Marine Resources, required to report to work at 3 A.M. at a building in East Setauket, New York, and start his work day in a dark and dangerously isolated area.

b.     Unlike other employees who are mandated to report to the Bureau of Marine Resources building in East Setauket NY to start their duty, Plaintiff is continually refused entry into the building when reporting at 3:00 a.m. He is thus denied access to restroom facilities and is inhumanely compelled to relieve himself in the parking lot and bushes around the building;

c.     Unlike other white employees similarly situated, Plaintiff is denied the use of an official vehicle to convey him from home to his place of work in the extremely early hours of the morning. Plaintiff is required to turn in the keys of his official vehicle at day's end, while other white inspectors enjoy the convenience of starting their work day by leaving from home in an official vehicle to their respective work sites;

d.     Plaintiff has been subjected to great ridicule and humiliated among his peers. RITCHIE routinely discusses Plaintiff's personnel matters with

-11-

other Food Inspector 1 colleagues (both white males) in violation of Plaintiff's privacy, thereby causing Plaintiff humiliation and embarrassment.

e.      On or about March 6, 2012 Plaintiff was verbally abused by HASTBACK and in a demeaning manner was told "now get out of my office!" RITCHIE was present at this incident and laughed at Plaintiff.

f.      Plaintiff has been ostracized and "frozen-out" of Inspection Unit meetings and has repeatedly been told that his opinion does not count.

g.      On or about June 4, 2012, Plaintiff was subjected to unlawful and unreasonable searches of his work area, as well as of his personal belongings.

h.      Plaintiff has been harassed and targeted with unjustifiable investigations and repeated interrogations orchestrated by Defendants and others acting at their request, instructions and/or instigation. The interrogations and investigations were motivated by retaliatory and discriminatory *animus* and were intended to impose undeserved discipline, secure Plaintiff's termination or force Plaintiff to resign his employment.

i.      Plaintiff has been subjected to selective and excessive criticism of his work performance.

j.      Plaintiff has been subjected to selective monitoring of his work and his use of lawfully earned leave accruals.

-12-

k.    Defendants have repeatedly refused to meaningfully engage Plaintiff in a collaborative effort to assist him in performance of his duties, and Plaintiff's repeated requests for guidance, feedback and to resolve misunderstandings have been rebuffed by Defendants. In response to Plaintiff's request for guidance, Defendant RITCHIE once retorted that she has "many other important things to attend to - and you are not one of them."

33.  The Defendants' conduct as aforesaid was motivated by considerations of race, color and national origin, and in retaliation for Plaintiff's complaints of discrimination in his State Lawsuit.

34.  In furtherance of their discriminatory objectives, Defendants purposefully circumvented established manuals, guidelines, policies and procedures.

35.  Plaintiff repeatedly objected and complained to GILMORE, HASTBACK and RITCHIE about Defendants' unlawful actions, decisions and failure to abide by proper anti-discrimination policies and procedures, to no avail.

36.  Defendants' actions were unlawful and in violation of Plaintiff's rights under Federal laws such as 42 U.S.C. §1981, and State laws, such as the New York State Human Rights Law.

37.  Because of Plaintiff's protests of violations of his human rights, Plaintiff has been subjected to further discrimination and/or retaliation.

38. As a proximate result of Defendants' discriminatory conduct towards Plaintiff, Plaintiff has suffered and continues to suffer significant monetary loss and damages.

39. As a further proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer from severe emotional distress, lasting embarrassment, humiliation and anguish, as well as other incidental and consequential damages and expenses.

40. Defendants' conduct are outrageous and malicious, were intended to injure Plaintiff, and was carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling him to punitive damages.

41. Plaintiff has no complete, plain, clear or adequate remedy at law.

42. Defendants must be restrained from further retaliation and discrimination against Plaintiff and directed to cease and desist from their unlawful acts against Plaintiff.

43. The acts of the Defendants against Plaintiff continue.

44. Plaintiff believes that the Defendants' unlawful acts against him will continue until this Court, by injunction and/or its judgment, compels otherwise.

## AS AND FOR A FIRST COUNT
### (Pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1981)

45.  Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

46.  Defendants subjected Plaintiff to differential terms and conditions of employment because of his race and national origin.

47.  These differential terms and conditions of employment, as hereinbefore alleged, include, but are not limited to: refusing to grant Plaintiff's leave requests; refusing to approve Plaintiffs timesheets; assigning Plaintiff to hazardous work locations; threatening to terminate Plaintiff's employment; reassigning Plaintiff to a position performing out of title work; incessant harassment not experienced by similarly situated white employees; excessive criticism not otherwise leveled against employees who are not black or of Jamaican national origin, and retaliation for his complaints of unlawful discrimination.

48.  All the foregoing actions were taken by the Defendants in order to deprive Plaintiff of equal employment and other contractual opportunities on account of his race.

49.  Because of the willful and deliberate actions of the Defendants, and as a proximate cause thereof, Plaintiff has been and continues to be denied his right to equal employment opportunity in violation of 42 U.S.C. §1981.

50.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A SECOND COUNT
### (Retaliation Pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1981)

51.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

52.    Defendants' aforesaid conduct was in retaliation for Plaintiff's complaints of discrimination on the basis of race and violated plaintiffs rights under 42 U.S.C. §1981.

53.    By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A THIRD COUNT
### (Race, Color and National Origin Discrimination in Violation of NYHRL)

54.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

55.    By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of his race and color, Defendants violated the New York State Human Rights Law.

56. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## AS AND FOR A FOURTH COUNT
### (Retaliation in Violation of NYHRL)

57. Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

58. All the various actions taken by the Defendants against Plaintiff subsequent to his complaints of discrimination constitute unlawful retaliation in violation of New York State Human Rights Laws.

59. By reason of the foregoing, plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than One Hundred Thousand ($100,000.00) Dollars.

## PUNITIVE DAMAGES

60. By reason of the wanton, unrepentant, reckless and egregious conduct of Defendants herein-above alleged, Plaintiff claims punitive damages.

**WHEREFORE,** Plaintiff prays that this Court grant him judgment containing the following relief:

a.      Impanel a jury to hear Plaintiff's claims;

-17-

b.    Grant plaintiff preliminary and permanent injunctions, prohibiting the Defendants, their agents, successors, employees,  and those acting in concert with them and at their direction from engaging in any of the practices set forth above and any other practice shown to be unlawful or retaliatory or discriminatory on the basis of race, color, national origin or disability with respect to compensation, terms, conditions and privileges of employment or from continuing or maintaining a policy, practice, custom or usage of denying, abridging, withholding, conditioning, limiting or otherwise interfering with the rights of Plaintiff to enjoy equal employment opportunities secured by law;

c.    Establish an imposed oversight and monitoring of the activities of Defendants to prevent future acts of retaliation;

d.    Establish a mechanism for the enforcement of the injunctions by requiring the Defendants to present to the Court within 30 days of the issuance of the injunction, a plan showing precisely and in detail how they will comply with the Court's order and that they cease and desist from policies, practices, customs and usages of discrimination against plaintiff and other persons similarly situated;

e.    An award of damages in an amount to be determined upon the trial of this matter to compensate plaintiff for his monetary loss and damages,

-18-

including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits.

f.   An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

g.   An award of damages in an amount to be determined upon the trial of this matter  to compensate plaintiff for violations of his rights under the New York State Human Rights Law and 42 U.S.C. §1981;

h.    An award of punitive damages to be determined at the time of trial for each cause of action;

i.   An award of reasonable attorneys' fees and costs related to Plaintiff's claims under 42 U.S.C. §1981, and the New York State Human Rights Law; and,

j.   Such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
July 31, 2012

Respectfully Submitted,

SAMUEL O. MADUEGBUNA, ESQ.
**MADUEGBUNA COOPER LLP**
Attorneys for Plaintiff
PAUL COTTERELL
110 Wall Street, 11th Floor
New York, New York 10005
(212) 232-0155

TO:   JAMES GILMORE
      New York State Department of Environmental Conservation
      625 Broadway,
      Albany, New York 12233

      WILLIAM HASTBACK
      New York State Department of Environmental Conservation
      625 Broadway,
      Albany, New York 12233

      SUSAN RITCHIE
      New York State Department of Environmental Conservation
      625 Broadway,
      Albany, New York 12233

*UNITED STATES DISTRICT COURT*
*EASTERN DISTRICT OF NEW YORK*                          *Docket No.:*

-----------------------------------------------------------------------------------------------

*PAUL COTTERELL,*

                                            *Plaintiff,*

            *-against-*


*JAMES GILMORE, WILLIAM HASTBACK,*
*SUSAN RITCHIE, et al.*


                                            *Defendants.*


-----------------------------------------------------------------------------------------------


## *COMPLAINT AND JURY DEMAND*

-----------------------------------------------------------------------------------------------

*Signature (Rule 130-1.1-a)*


_____

*Print name beneath   SAMUEL O. MADUEGBUNA, ESQ.*


_____


                        *Yours, etc*


                *MADUEGBUNA COOPER LLP*
                *Attorneys for Plaintiff*
                *110 Wall Street, 11th Floor*
                *New York, New York 10005*
                *(212) 232-0155*

*To: All Counsel of Record*

*Service of the within is hereby admitted on*
_____

*Attorneys for*